UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| CHARLES C. BRAMEL, | ) | CASE NO. 4:12CV1334 |
| | ) | |
| Plaintiff, | ) | MAGISTRATE JUDGE GEORGE J. |
| | ) | LIMBERT |
| | ) | |
| v. | ) | |
| | ) | |
| | ) | |
| SMITH TOWNSHIP POLICE | ) | MEMORANDUM OPINION AND ORDER |
| DEPARTMENT, et al., | ) | |
| | ) | |
| Defendants. | ) | |

This matter is before the Court on the motion for judgment on the pleadings filed on behalf
of Defendants, Smith Township Police Department and Smith Township Board of Trustees on
October 22, 2012. ECF Dkt. #10. On November 23, 2012, Plaintiff, Charles C. Bramel filed his
response to Defendants' motion. ECF Dkt. #15. Defendants filed their reply brief on November 29,
2012. ECF Dkt. #16.

In his complaint, Plaintiff asserts two violations of his constitutional rights, wrongful arrest
(Count One) and illegal search and seizure (Count Two), pursuant to 42 U.S.C. 1983. Plaintiff also
asserts four state law claims, false imprisonment (Count Three), malicious prosecution (Count Four),
 abuse of process (Count Five) and intentional infliction of emotional distress (Count Six). For the
following reasons, the motion for judgment on the pleadings is granted  on the federal claims, the
Court declines to exercise supplemental jurisdiction over the remaining state claims, and the case
is dismissed.

## I.    Standard of Review

Federal Civil Rule 12(c) provides that "[a]fter the pleadings are closed – but early enough
not to delay the trial – a party may move for judgment on the pleadings."  A court reviews a Rule

12(c) motion for judgment on the pleadings under the same standard as a motion to dismiss. *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010).

In scrutinizing a complaint under Rule 12(b)(6), this Court is required to "accept all well-pleaded factual allegations of the complaint as true and construe the complaint in the light most favorable to the plaintiff." *Dubay v. Wells*, 506 F.3d 422, 426 (6th Cir.2007). Although a complaint need not contain "detailed factual allegations," it does require more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).

Thus, a complaint survives a motion to dismiss if it "contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009).  And, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 609 (6th Cir.2009) (quoting *Iqbal*, 129 S.Ct. at 1949).

In order to withstand a Rule 12(c) motion for judgment on the pleadings, "a complaint must contain direct or inferential allegations respecting all the material elements under some viable legal theory." *Commercial Money Ctr., Inc. v. Illinois Union Ins. Co.*, 508 F.3d 327, 336 (6th Cir.2007). "The factual allegations in the complaint need to be sufficient to give notice to the defendant as to what claims are alleged, and the plaintiff must plead 'sufficient factual matter' to render the legal claim plausible, i.e., more than merely possible." *Fritz* at 722 (internal citation omitted). A "legal conclusion couched as a factual allegation" need not be accepted as true, nor are recitations of the elements of a cause of action sufficient. *Hensley Mfg.* at 609 (quoting *Twombly* at 555). When evaluating a motion for a judgment on the pleadings, a court may consider the pleadings, which consist of the complaint, the answer, and any written instrument attached as exhibits. Fed.R.Civ.P. 12(c); Fed.R.Civ.P. 7(a) (defining "pleadings" to include the complaint and the answer).

## II. Facts

The following facts are taken from Plaintiff's complaint and shall be taken as true for the purposes of the pending motion. Smith Township Police Department is a government entity serving

Smith Township; it is established by the Township Board of Trustees in accordance with Ohio law, specifically Ohio Revised Code § 505.48, and is ultimately controlled by the Board of Trustees. ECF Dkt. #1 at ¶4.  Smith Township Trustees are elected officials charged with governing and overseeing Smith Township according to Title 5 of the Ohio Revised Code and elected according to O.R.C. § 505.01. *Id.* at ¶5. The Trustees have ultimate control over the Police Department. *Id.*

Plaintiff was the owner of the property known as 18294 State Route 62, Beloit, Ohio ("the premises").  *Id.* at ¶7. For reasons not material to this lawsuit, he later transferred the premises to a limited liability company of which he is a member. The premises are part commercial and part residential.  *Id.* at ¶8. The building is divided into three parts: a restaurant, an airplane hangar, and a residence. Plaintiff lives in the residence and keeps his airplane in the hangar. The premises are right next to – and in fact used to be a part of – the Tri-City Airport, owned and operated by 3G6, LLC. Plaintiff's parcel was separated from the airport property years ago. *Id.* at ¶9.

Despite being a completely separate property from the airport, users of the airport continually drive over Plaintiff's property on their way to the airport's offices and hangars. *Id.* at ¶10. This unauthorized trespass over Plaintiff's property caused friction between him and the members of 3G6, LLC, all of whom keep airplanes at the airport or run businesses there. The members of 3G6, LLC and other airport users continue to drive over Plaintiff's property, even though there are other means of access to the airport hangars. *Id.* at ¶11.

The members of 3G6, LLC have claimed that they possess an "easement" for the premises' driveway, although none is recorded in the office of the Mahoning County Recorder. *Id.* at ¶12. The Smith Township Police Department have refused to stop vehicles from trespassing across Plaintiff's property, and in turn have prohibited Plaintiff from attempting to stop the vehicle traffic across his property.  *Id.* at ¶13.

On June 30, 2009, Plaintiff took action by placing construction warning-tape barriers on the driveway. *Id.* at ¶14. One of the members of 3G6, LLC reacted by crashing through the tape barriers in his truck while Plaintiff was in the process erecting them. Plaintiff, however, was carrying a handgun and fired three warning shots into the ground. The driver of the vehicle, in the process of crashing the tape barrier, hit Plaintiff with his truck and broke Plaintiff's leg. *Id.* at ¶15.

-3-

As a result of the incident, Plaintiff was charged with felonious assault and aggravated menacing.  Plaintiff had no criminal record, was released on bond, and the matter was set for trial. *Id.* at ¶16.  No one from the trespassing vehicles was criminally charged. *Id.* at ¶17.

From the time Plaintiff was released on bond until mid-2010, the members of 3G6, LLC, particularly Thomas E. Warner, a former police officer, and those acting in concert with them, would repeatedly call the police in various attempts to have Plaintiff arrested. *Id.* at ¶18.

On or about May 8, 2011, Plaintiff was tending to his property by cutting and pruning weeds, bushes, and trees, and was also beginning construction of a partition fence. *Id.* at ¶19. Some of the plants he was pruning were on Plaintiff's property and some were on neighbors' property but hanging over or otherwise encroaching on the premises' fence line.  The Smith Township police were called, and Plaintiff was charged with criminal mischief, criminal damaging, and criminal trespassing. *Id.* at ¶20.  Plaintiff received a citation for these misdemeanors and was scheduled to appear in Mahoning County Court No. 3, located in Sebring. *Id.* at ¶21.

When Plaintiff appeared in court on May 12, 2011, he was immediately arrested by officers who were waiting there for him and taken to the Mahoning County Jail. *Id.* at ¶22. The criminal mischief, criminal damaging, and criminal trespassing charges were deemed to have violated Plaintiff's bond from the felonious assault case.  The trial court judge presiding over the felonious assault case issued an immediate bail revocation without a hearing. *Id.* at ¶23.  Plaintiff spent the next fifteen days and nights in jail. *Id.* at ¶24.

Plaintiff contends that he was not guilty of the new charges, and the Smith Township Police Department had actual knowledge of that fact or should have known that had they a better grasp of Ohio law. *Id.* at ¶25. Ohio Revised Code § 971.08, captioned "Right to enter onto adjoining property to build and maintain fence," states that it is not a crime to enter upon a neighbor's property to tend to or construct a partition fence, or to weed overhanging plants:

> (A) If an owner chooses to build a partition fence and the owner of adjoining property does not share in the construction of the fence, the owner building the fence, or a contractor hired by the owner, may enter on the adjoining property for no more than ten feet for the length of the fence to build and maintain in good repair the fence. The owner or contractor building the fence is not guilty of a violation of section 2911.21 of the Revised Code or an ordinance of a municipal corporation that is substantially equivalent, provided that the owner or contractor does not enter onto

-4-

the property beyond the ten feet specified in this division. However, that owner or contractor is liable for all damages caused by the entry onto the adjoining property, including damages to crops.

(B) No person shall obstruct or interfere with anyone who is lawfully engaged in the construction or maintenance of a partition fence.

Ohio common law also holds that property owners have a right to clear branches and other flora from a neighbor's tree that overhangs his property because the tree's overhanging limbs deprive the property owner of the full use of his own property.  See, e.g., *Murray v. Heabron* (1947), 35 Ohio Op. 135, 74 N.E.2d 648; *Newport Harbor Ass'n v. DiCello*, 2006 Ohio 4493, ¶28.  On June 9, 2011, the prosecutor for Mahoning County Court No. 3 dismissed the criminal mischief, criminal damaging, and criminal trespassing charges against Plaintiff based upon "§971.01 et seq. ORC." *Id.* at ¶30.

In addition, after Plaintiff was incarcerated on May 12, 2011, but before he was released, the Smith Township Police Department executed a search warrant at Plaintiff's home.  *Id.* at ¶31.  The purported reason for this warrant[1] was that Plaintiff had been seen in a sporting goods store that sold firearms.  *Id.* at ¶32.  The Police Department assumed that Plaintiff had purchased a firearm, which constituted a violation of one of the conditions of his bond.  However, Plaintiff contends that he had not purchased any firearms, ammunition, or accessories, neither at the sporting goods store nor at any time while he was on bond.  *Id.* at ¶33.

On or about June 30, 2011 the Smith Township Police Department searched Plaintiff's house thoroughly.  No weapons or ammunition were found.  *Id.* at ¶36. Despite the failure to find any of the things that the search warrant was intended to reveal, the police department kept its criminal file

---

[1]The affidavit in support of the search warrant reads, in pertinent part:

[T]he Smith Township Police Department. . . has reason to believe and has good cause to believe that there is evidence of the crimes of Having Weapons While under Disability. . . to wit:  firearms and ammunition, which should be obtained from the building owned by [Plaintiff], 18294 S. R. 62, Beloit, Ohio and located at that same address. If found, said property shall be seized and used in the prosecution for the offenses of Having Weapons While under disability, a violation of R.C.2923.13(A)(2)(B), a felony of the third degree. . . . .

Id. at ¶35.

on this matter open, with the "offense" that Plaintiff was to be charged with categorized as "pending." *Id.* at ¶37.

   While searching Plaintiff's house, the Smith Township Police Department may have very well searched for guns and ammunition, but its officers exceeded the warrant's authority by searching through and reading Plaintiff's business papers and correspondences. *Id.* at ¶381. Within a week of the search warrant's execution, the attorney for 3G6, LLC in the civil litigation involving the easement began referencing and using what had been – before the search warrant – Plaintiff's confidential business information. *Id.* at ¶40. 3G6,LLC's attorney had never asked Plaintiff about any of those matters in a deposition, nor had the attorney directed any interrogatories or requests for production in that regard. Much of the information dealt with real estate that Plaintiff owned in Florida, and that is precisely the documentation that the Smith Township Police Department had examined. *Id.* at ¶41.

   Plaintiff contends that there is no other way that 3G6, LLC could have garnered this information except by being told of it by officers of the Smith Township Police Department, one of whom doubled as an Alliance, Ohio police officer, and the same police department from which Thomas E. Warner is retired. *Id.* at ¶42. The wrongful charges and arrest resulted in his incarceration, requiring him to appear in criminal garb for a scheduled deposition, and required the delay of the civil case. *Id.* at ¶6.

## III.    Law

   Section 1983 is the procedural vehicle through which a plaintiff may "vindicate the deprivation of a right secured by the Constitution or laws of the United States caused by a person acting under color of state law." *Jenkins v. Rock Hill Local Sch. Dist.*, 513 F.3d 580, 585 (2008). To survive a motion to dismiss a claim under 42 U.S.C. § 1983, the plaintiff must allege two elements:  (1) the defendant acted under color of state law; and (2) the defendant's conduct deprived the plaintiff of rights secured under federal law. *Bloch v. Ribar*, 156 F.3d 673, 677 (6th Cir.1998).

   In *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), , the Supreme Court held that municipalities are "persons" subject to suit under §1983. *Monell*, 436 U.S. at 700–01, 98 S.Ct. at 2041 (overruling *Monroe v. Pape*, 365 U.S. 167, 81 S.Ct.

-6-

473, 5 L.Ed.2d 492 (1961). Municipalities are not, however, liable for every misdeed of their employees and agents.

"Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Id.* at 694, 98 S.Ct. at 2037–38. In other words, a municipality or local government may be found liable under §1983 "if the governmental body itself subjects a person to a deprivation of rights or causes a person to be subjected to such deprivation." *Connick v. Thompson*, 563 U.S. ___, 131 S.Ct. 1350, 1359, 179 L.Ed.2d 417 (2011) (internal quotation marks omitted).

"[T]he touchstone of 'official policy' is designed 'to distinguish acts of the municipality from acts of employees of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible.' " *City of St. Louis v. Praprotnik*, 485 U.S. 112, 138 (1988) (quoting *Pembaur v. Cincinnati*, 475 U.S. 469, 479–80 (1986)) (emphasis in original). To demonstrate municipal liability, a plaintiff "must (1) identify the municipal policy or custom, (2) connect the policy to the municipality, and (3) show that his particular injury was incurred due to execution of that policy." *Alkire v. Irving*, 330 F.3d 802, 815 (6th Cir.2003)(citing *Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir.1993)).

An employee's unconstitutional conduct may support municipal liability where it is ratified by an authorized policymaker.  *Lentz v. City of Cleveland*, 333 F. App'x 42, 47 (6th Cir.2009). "[E]ven if the allegedly unconstitutional decision is initially made by a subordinate official, when that decision is appealed to and affirmed by an official with final authority over a matter, the municipality may be held liable for this affirmance." *Arendale v.. City of Memphis*, 519 F.3d 587, 602 (6th Cir.2008), reh'g & reh'g *en banc* denied (July 31, 2008).

"Whether an official has such final authority is a question of state law."  *Baar v. Jefferson Cnty. Bd. of Educ.*, 476 F. App'x 621, 637 (6th Cir.2012) (quoting *Adkins v. Bd. of Educ. of Magoffin Cnty., Ky.*, 982 F.2d 952, 957 (6th Cir.1993)). "Officials can derive their authority to make final policy from customs or legislative enactments, or such authority can be delegated to them by other officials who have final policymaking authority." *Feliciano v. City of Cleveland*, 988 F.2d 649, 655

-7-

(6th Cir.)(citing *Pembaur,* 475 U.S. at 483).  "This includes state and local positive law, such as statutes, ordinances, and regulations, and less formal sources of law such as local practice and custom." *Id.* (citing *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 737, 109 S.Ct. 2702, 2723, 105 L.Ed.2d 598 (1989)) (internal quotation marks omitted), see also *Monistere v. City of Memphis*, 115 F. App'x 845, 852 (6th Cir.2004).

"[M]ere acquiescence in a single discretionary decision by a subordinate is not sufficient to show ratification." *Feliciano*, 988 F.2d at 656. "Ratification of a subordinate's action requires more than acquiescence—it requires affirmative approval of a particular decision made by a subordinate." *Feliciano*, 988 F.2d at 656. A plaintiff "must offer proof that an official charged with making final policy regarding [the subject matter] expressly approved [the subordinate's] actions." *Id.*

## IV.    Analysis

Plaintiff has named the township police department and the township board of trustees as defendants in this case.  The police officers have not been named in their individual capacity. Consequently, the constitutional violations in Counts One and Two are alleged solely against Smith Township.  However, none of the allegations in the complaint demonstrate that any alleged wrongdoing or injury occurred as a result of a policy or custom implemented or endorsed by Smith Township.  Plaintiff has alleged constitutional violations suffered at the hands of unnamed police officers but has not alleged any connection between the municipal employees and a custom or policy of the municipality.   Likewise, Plaintiff has failed to allege any ratification of the allegedly unconstitutional conduct by a final policymaker for Smith Township.

In his Complaint, Plaintiff alleges that Smith Township Police Department is ultimately controlled by the Board of Trustees. ECF Dkt. #1 at ¶4.  He further alleges that the Smith Township Trustees have ultimate control over the Police Department. *Id.* at ¶5.  Based upon the foregoing allegations, Plaintiff relies upon a *respondeat superior* theory in his Complaint, rather than asserting that the alleged constitutional violations are the result of a specific custom of policy of Smith Township.  See *Monell*, 436 U.S. at 691; *Searcy v. City of Dayton*, 38 F.3d 282, 286 (6th Cir.1994); *Berry v. City of Detroit*, 25 F.3d 1342, 1345 (6th Cir.1994). ("[A] municipality cannot be held liable solely because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under

-8-

§1983 on a *respondeat superior* theory.") Moreover, Plaintiff does not allege any ratification of the allegedly unconstitutional conduct by a final policymaker for Smith Township.  Therefore, the complaint fails to establish a basis of liability against the municipality and fails to state a cognizable §1983 claim.  Accordingly, the motion for judgment on the pleadings is granted with respect to the federal claims.

## V.    Pendent jurisdiction

Having dismissed Plaintiff's federal claims at this early stage of the litigation, the Court declines to exercise pendent jurisdiction over Plaintiff's state law claims. See *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726 (1966)("[I]f the federal claims are dismissed before trial ... the state claims should be dismissed as well.")  Therefore, Plaintiff's pendent state law claims are dismissed without prejudice.

## VI.    Conclusion

For the foregoing reasons, the Motion for Judgment on the Pleadings is GRANTED with respect to Counts One and Two of the Complaint, which are DISMISSED with prejudice. ECF Dkt. #10.  Furthermore, the Court declines to exercise pendent jurisdiction over the remaining state claims, which are DISMISSED without prejudice, and this case is DISMISSED in its entirety.  A Judgment Entry will be entered contemporaneously consistent with this Opinion.

IT IS SO ORDERED.

SIGNED AND ENTERED on this 18th day of December, 2012.

*/s/ George J. Limbert*
GEORGE J. LIMBERT
UNITED STATES MAGISTRATE JUDGE